

COMMONWEALTH OF MASSACHUSETTS

Essex, ss.

Superior Court
C.A. No. 2014-1469 D

KEBB MANAGEMENT, INC.,
Plaintiff

v.

HOME DEPOT U.S.A., INC.,
Defendant

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX
SEP 16 2014
CLERK

COMPLAINT

1. The Plaintiff, KEBB Management, Inc. ("KEBB"), is a Massachusetts corporation with its principal place of business at 240 Pleasant Street, Methuen, Essex County, Massachusetts 01844.

2. The Defendant, Home Depot U.S.A., Inc. ("Home Depot"), is a Delaware corporation with its principal place of business located at 2455 Paces Ferry Road, Atlanta, Georgia 30339. Home Depot conducts business in the Commonwealth of Massachusetts.

*FACTS*

3. On or about May 27, 2010, the parties executed a "Maintenance Service Agreement" (the "Contract") for KEBB to perform maintenance, repair, and other related services to and for the benefit of Home Depot. A true copy of the Contract is attached hereto as Exhibit "1".

4. From and after May 10, 2010 through May, 2013, the parties to the Contract fulfilled each of their respective duties and obligations wherein (1) Home Depot would set forth various work orders to KEBB; (2) KEBB would perform the

required work contained within the work orders; and (3) Home Depot would pay the agreed to amount to KEBB for services, labor, and materials, as invoiced by KEBB.

5.      In or about June, 2013, KEBB was requested to quote, and KEBB did quote, an estimate for the repair of the concrete floors at the Watertown, Massachusetts, Home Depot location, pursuant to Work Order No. 2602001030 (the "Work Order"). A true copy of the "Building Services – Quote Form" generated by Home Depot used by KEBB to quote the Work Order is attached hereto as Exhibit "2".

6.      KEBB provided a quote under the Work Order in the amount of $110,500.00.

7.      Pursuant to communications by KEBB with Russell Rawcliffe, a representative of Home Depot, specifically by an email dated June 20, 2013, Mr. Rawcliffe directed KEBB to upload the quote to the Work Order, indicating that once uploaded that the quote would be approved. A true copy of the June 20, 2013 email is attached hereto as Exhibit "3".

8.      On June 20, 2013, KEBB uploaded the quote as instructed by Home Depot's representative, Rawcliffe, as to the Work Order.

9.      As of October 22, 2013, KEBB completed the work as enumerated in the Work Order, and issued an invoice for $110,500.00 per the Work Order. A true copy of the invoice generated by KEBB dated October 23, 2013, is attached hereto as Exhibit "4".

10.     Home Depot accepted the work performed by KEBB as of October 22, 2013.

11.     The money claimed owing by KEBB in the sum of $110,500.00 is due, and has been due since October 2013.

12. After repeated requests for payment by KEBB were rebuffed by Home Depot, on January 14, 2104, KEBB sent correspondence to a representative from Home Depot detailing the work performed per the Work Order, including pictures. A true copy of the correspondence (without pictures) is attached hereto as Exhibit "5".

13. On April 28, 2014, still without payment, KEBB, through its counsel, made demand for payment in the amount of $110,500.00 to be made within seven (7) days of the date of the correspondence, or alternatively, for the parties to engage in mediation pursuant to the Contract. A true copy of the correspondence is attached hereto as Exhibit "6".

14. At or about April 22, 2014, KEBB confirmed that Home Depot had within its database, and specifically a "Bulk Invoice Report", referenced the Work Order in the sum quoted and invoiced by KEBB, and said Report had no reference whatsoever from Home Depot that the Work Order had been rejected. A true copy of the Bulk Invoice Report is attached hereto as Exhibit "7".

15. As of August 13, 2014, Home Depot has failed, refused, and neglected to pay KEBB per the Work Order, or to otherwise agree to mediation to resolve the matter at hand, all without explanation or justification.

16. During the time period after the completion of the Work Order by KEBB in October, 2013, Home Depot issued seven (7) additional work orders to KEBB. True copies of the invoices are attached as Exhibit "8".

17. Despite repeated demands for payment, a collective balance remains due and owing to KEBB from Home Depot on the seven invoices totaling $15,097.07.

*COUNT I*
*Breach of Contract*

18. The Plaintiff incorporates the allegations of Counts 1 through 17 as if restated verbatim herein.

19. The actions and conduct of Home Depot constitute a breach of its contractual obligations with the Plaintiff, resulting in damage to the Plaintiff.

*COUNT II*
***Breach of Covenant of Good Faith and Fair Dealing***

20. The Plaintiff incorporates the allegations of Counts 1 through 19 as if restated verbatim herein.

21. The actions and conduct of Home Depot constitute a breach of its covenant of good faith and fair dealing with the Plaintiff, resulting in damage to the Plaintiff.

*COUNT III*
***Quantum Meruit***

22. The Plaintiff incorporates the allegations of Counts 1 through 21 as if restated verbatim herein.

23. As of October, 2013, KEBB provided materials and rendered services to Home Depori valued at $125,597.07.

*COUNT III*
***Unfair or Deceptive Acts or Practices - M.G.L. c. 93A, §11***

24. The Plaintiff incorporates the allegations of Counts 1 through 21 as if restated verbatim herein.

25. The actions of Home Depot constitute unfair or deceptive acts or practices in violation of M.G.L. c. 93A, resulting in damage to the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendant as follows:

a. Under Count I, for a determination that Home Depot has breached its contractual obligations to the Plaintiff;

b. Under Count II, for a determination that Home Depot has breached its contractual duty of good faith and fair dealing to the Plaintiff;

c. Under Count III, for a determination that Home Depot owes to the Plaintiff the value for goods, labor, and materials rendered to and accepted by Home Depot;

d. Under Count IV, for a determination that Home Depot has engaged in a knowing and willful violation of M.G.L. c. 93A, for an order doubling or tripling of such damages, along with reasonable attorney's fees to be awarded to the Plaintiff;

e. That the Defendant be ordered to participate in mediation, forthwith, with the Plaintiff, within the Commonwealth of Massachusetts; and

f. For such other and further relief as this Court deems just and proper.

**JURY DEMAND**

The Plaintiff demands a Jury Trial on all matters deemed triable.

Respectfully submitted,

KEBB Management, Inc.,
By its attorneys,

Dated: September 15, 2014

Michael B. Feinman
BBO#545935
Stephen P. Shannon
BBO #634170
Feinman Law Offices
69 Park Street
Andover, MA 01810
Tel: 978-475-0080
Fax: 978-475-0852
Email:mbf@feinmanlaw.com

# EXHIBIT "1"

# MAINTENANCE SERVICES AGREEMENT

This non-exclusive MAINTENANCE SERVICES AGREEMENT ("Agreement") is entered into this 27th day of May, 2010 ("Effective Date") by HOME DEPOT U.S.A., INC., a Delaware corporation, with its principal place of business located at 2455 Paces Ferry Road, Atlanta, Georgia 30339 ("Home Depot" or "THD") and KEBB MANAGEMENT INC., a ________ corporation, with offices located PO BOX 64 METHEUN, MA 01844 ("Contractor"). The parties, intending to be legally bound, agree as follows:

**1.0 Scope of Services.**

**1.1 Services.** Contractor shall provide materials, equipment, tools, and labor to perform the services set forth in Work Orders provided by THD (collectively "Services"). Every Exhibit or Work Order provided by THD and all services requested by THD and provided by Contractor are subject to this Maintenance Services Agreement. For any Services, Home Depot shall issue to Contractor a Work Order (as defined in Section 4.2 below) or a separate Addendum to this Agreement (collectively "Exhibit(s)").

**1.2 Precedence.** In the event of an inconsistency between the terms and conditions of this Agreement and any Exhibit or Work Order, the terms and conditions of this Agreement shall govern and control, except as otherwise expressly amended in the Exhibit or Work Order.

**2.0 Compliance.**

**2.1 Home Depot Safety Requirements.** Whenever on THD's property, Contractor shall comply with all THD policies and procedures governing on site work, including, without limitation, THD's safety, security, and data protection policies and procedures. At THD's request and expense, Contractor shall attend THD training sessions regarding THD's on-site rules of behavior, work schedule, safety, security, data protection policies and procedures, and such other THD policies and procedures as THD may deem applicable. Contractor shall communicate these policies and procedures to all employees, agents, and subcontractors, if any, who will be present at any Home Depot property on behalf of Contractor (collectively, "Staff"). A copy of THD's current Safety Standards for Service Contractors is attached hereto as Exhibit A and all updated versions may be found on www.homedepot.com/suppliercenter. Contractor is responsible for complying and ensuring its Staff complies with the current Safety Standards for Service Contractors in place throughout the Agreement.

**2.2 Environmental Compliance.** Contractor agrees to comply with all applicable environmental laws and regulations, including laws governing the safe handling and disposal of hazardous materials, oil products and waste, in fulfilling its responsibilities under this Agreement. Contractor also agrees to use its best management practices, so as to fulfill its obligations under this Agreement in as environmentally sound and energy conserving manner as reasonably possible. Contractor shall use commercially reasonable efforts to undertake the specific practices described herein.

**3.0 Term.**

**3.1 Term and Termination.** The term of this Agreement shall commence on the Effective Date and shall continue in effect until either party terminates the Agreement as follows:

(a) Either party may terminate this Agreement (i) for material failure by the other party to comply with the terms of this Agreement, provided such breach is not cured within thirty (30) days after written notice of the breach is received from the other party.

(b) THD may terminate this Agreement without cause, upon fourteen (14) days prior written notice to Contractor.

(c) Unless otherwise expressly specified by THD, following delivery of THD's notice of termination of this Agreement, Contractor shall complete any outstanding tasks up through the date of termination.

(d) THD may terminate any Services, portion of Service, location or Exhibit without cause with a one week written fax or email notice to Contractor, without terminating the entire Agreement.

(e) All Exhibits shall be co-terminus with this Master Maintenance Agreement, unless specifically noted on the Exhibit, or terminated sooner as provided above.

**3.2 Effect of Termination.** Upon termination of this Agreement, Contractor shall invoice THD for fees and expenses related to the Services completed in accordance with this Agreement within thirty (30) days after the effective date of termination. THD shall pay undisputed invoices in accordance with Section 4 of this Agreement. Upon payment of such invoices, THD shall have no further payment obligations with regard to this Agreement.

**4.0 Payment.**

**4.1 Fees and Expenses.** Fees allowed under this Agreement shall be as set forth herein or the attached Exhibit if applicable. If the Services are detailed in a Work Order, the fees allowed shall not exceed the amount referenced in the Work Order. Expenses allowed under this Agreement shall be as follows: travel expenses actually incurred where such expenses are pre-approved by Home Depot in writing and a valid receipt is provided for any expense in excess of One Hundred Dollars ($100.00) ("Expenses"). Contractor shall be solely responsible for all other expenses incurred in the performance of this Agreement.

**4.2 Invoices and Payment.** To receive payment, Contractor must submit to Home Depot, within thirty (30) days of performance of Services, an invoice for Fees and Expenses with the applicable Work Order (defined below) attached ("Valid Invoice"). "**Work Order**" shall mean the written authorization issued by Home Depot to Contractor to perform Services in accordance with the terms and conditions of this Agreement. Home Depot shall issue a Work Order upon acceptance (either verbal or written) by Contractor of a request by Home Depot for Contractor to perform Services. Home Depot's payment terms shall be net forty-five (45) days after Home Depot's receipt of an undisputed invoice. **Home Depot shall not be obligated**

**to pay any Invoice submitted more than one hundred and twenty (120) days after the fees or expenses have been incurred and Home Depot shall have the option to set off any Fees and Expenses owed by Contractor.** Valid Invoices shall be submitted via the electronic billing process through TMS unless THD has approved hard copy remittance of invoices. If THD has approved hard copy invoice remittance, such invoices shall be forwarded by Contractor to the following address:

Home Depot U.S.A., Inc.
Maintenance Department – C3
P.O. Box 105573
Atlanta, GA 30348-5573
Attention: Invoice/Billing

4.3 Taxes. THD shall pay any federal, state, and local sales or use tax for materials and labor imposed on the delivery of Services, except for taxes based on Contractor's income. If THD pays any tax that is later held to not be due, Contractor shall promptly refund to THD the amount of taxes paid, together with interest on such refunded amount at the rate of one and one-half percent (1.5%) per month compounded monthly, or the highest lawful interest rate, whichever is less, from the date of payment by Home Depot.

4.4 **Review of Records**. For a period of five (5) years from the date of termination of this Agreement, Contractor shall maintain accurate books and records associated with the Services, including without limitation, timesheets, work specifications, invoices, and receipts ("**Records**"). Upon ten (10) days prior notice from Home Depot to Contractor, Home Depot or its representatives shall have the right to review Records. Such reviews shall be conducted at mutually convenient times, during Contractor's normal business hours and in a manner that does not materially disrupt Contractor's business operations. If such review reveals that Contractor has over-charged Home Depot, Home Depot shall notify Contractor of the amount of such over-charge and Contractor shall pay to Home Depot the amount of the over-charge plus interest within thirty (30) days from notification. Interest shall be calculated at a rate of one and one-half percent (1.5%) per month, compounded monthly, or the highest lawful interest rate, whichever is less, from the date of payment to Home Depot. In the event that over-charges exceed five percent (5%) of the agreed upon fees in an Exhibit, Contractor shall pay to Home Depot any reasonable costs and expenses incurred to conduct the review.

**5.0 Confidential Information.**

**5.1 Confidential Information.** Contractor acknowledges that performance under this Agreement may give Contractor, and its employees and agents, access to confidential information, proprietary systems, and trade secret information of THD (**"Confidential Information"**), which shall include all material and reports prepared for THD hereunder, all information in any form or medium that is disclosed or learned by Contractor in performance of the Agreement. Contractor agrees that it will keep all Confidential Information in strict confidence and not disclose or use the Confidential Information other than to fulfill its obligations to THD for a period of five (5) years or as long as such information is protected under law. Any trade secret information of THD shall be protected for as long as it is considered a trade secret. Contractor shall safeguard all Confidential Information using the same reasonable degree of care with which it protects its own confidential information. Contractor shall strictly limit access to any Confidential Information to its employees and agents on a need-to-know basis and who are under a contractual obligation to maintain the confidentiality of such information. Contractor shall be liable for any breach or alleged breach of the confidentiality obligations of its employees and agents.

5.2 Contractor shall not make known to any third party any information regarding this Agreement including, but not limited to, any work performed or any fee or commission arrangements. Contractor further agrees not to use in any advertising or sales promotion, press releases or other publicity matters, any endorsements, direct or indirect quotes, or pictures implying endorsement by THD or either its employees without prior written approval. In the event of a breach of this section by Contractor or its subcontractors, Home Depot shall have the right, at its option, to do one or more of the following: (i) issue a retraction in the name and on behalf of the Contractor; (ii) require Contractor to issue a retraction; or (iii) terminate all or any part of this Agreement without further liability. This provision shall survive termination of this Agreement. Contractor shall be liable for any breach or alleged breach of the confidentiality obligations of its employees and agents.

**6.0 Representations and Warranties.**

**6.1 Warranties.** Contractor represents and warrants that: (a) Contractor is financially solvent and has the ability to perform its obligations hereunder; (b) Contractor has not entered into and will not enter into any other agreement that conflicts with this Agreement or limits Contractor's ability to perform the Services; (c) Contractor will timely obtain all permits and licenses required to perform the Services; (d) the Services will meet the specifications listed in any applicable Exhibit; (e) the Services will be provided by Staff having the appropriate level of skill and training; (f) Contractor shall perform all Services on time, in a professional and workmanlike manner, in accordance with industry standards, and in compliance with all applicable federal, state and local laws, ordinances, by-laws, rules, and regulations; and (g) Contractor warrants all materials shall be new and all workmanship and materials shall be of good quality and free from all defects for the longer of one year from the date of acceptance of the Work, or such period as may be specified in the specifications provided be Home Depot. Contractor shall

promptly replace all defective Work at its sole cost and expense.

6.2 Immigration Laws. Contractor shall ensure that all Staff are in compliance with all applicable laws, regulations, and government policies and requirements relating to immigration ("**Immigration Laws**") and that they are legally able to perform the Services. Specifically, without limitation, Contractor shall comply fully with the record keeping and other requirements of the Immigration Laws. THD is not responsible for sponsorship of any workers who perform Services on behalf of Contractor.

**7.0 Indemnification.** Contractor ("**Indemnitor**") shall indemnify, defend, and hold harmless Home Depot, its parent, affiliates, subsidiaries, officers, employees, and agents ("**Indemnitees**") from and against any and all claims, lawsuits, judgments, losses, product recalls, and civil penalties for actions, liabilities, damages, costs, and expenses, including attorney's fees and court costs, arising out of or related to (a) the death of or injury to any person (including any employee or agent of Contractor) or property damage which resulted or is alleged to have resulted from any acts or omissions of Contractor, its employees and agents, subcontractors and/or any other persons for whose conduct it may be or is alleged to be legally responsible, or from the rental or use of its equipment in performing the Services; (b) the failure of Contractor to fully comply with any warranties, guarantees or representations of Contractor hereunder, including the failure of Contractor to comply with all applicable laws; (c) any breach or alleged breach of the this Agreement; (d) the infringement of any patent, design, trade name, trademark, copyright, trade secret or any other right or entitlement of a third party; (e) any and all liens, including, without limitation, construction, laborers, materialman's, mechanic's, or any other lien arising from Indemnitor's or its subcontractor's performance of the Services or supplier of materials in performance of the Service; (f) any claim or lawsuit filed against THD by any Staff of Indemnitor (i) seeking benefits due to employees of Home Depot by virtue of their engagement, (ii) resulting from any claim that an independent sub-contractor of Indemnitor is not an independent contractor, (iii) that any current or former employee is not or was not an employee of Indemnitor, or (iv) termination for any reason whatsoever by Indemnitor; (g) Indemnitor's failure to be in compliance with any governmental agency's regulatory requirements for the Indemnitor or it's Staff including any immigration laws; or (h) Contractor's violation or noncompliance with any environmental, hazardous waste, or Federal or State law governing the transportation, disposal, and/or re-use of commercial waste or cleaning supplies. The Indemnitees will give prompt notice of any such claim to the Indemnitor, and the Indemnitor will defend the Indemnitees at the Indemnitees' request. THD shall not be liable to Contractor for indirect, incidental, special, punitive or consequential damages, including damages for lost opportunities, lost profits from this Agreement or any other transaction, or lost savings, even if such damages were foreseeable or result from a breach of this Agreement. In no event will THD be responsible for any liabilities or damages resulting from, or in any way related to, this Agreement, whether in contract, warranty, indemnity, tort (including negligence), strict liability, or otherwise greater than one million dollars ($1,000,000), except to the extent such liabilities or damages are resulting from the gross negligence or willful misconduct of Home Depot. Home Depot's liability under this Agreement shall terminate one (1) year from the instance giving rise to such claim.

**8.0 Insurance; Bonds.**

8.1 Required Coverage. During the term of this Agreement, including any applicable warranty period, Contractor agrees to maintain, at Contractor's sole cost and expense, the following insurance coverage: (a) Worker's Compensation Insurance to the full extent required by the laws of the states or jurisdictions in which the maintenance services are being performed; (b) Employers Liability insurance with limits of not less than $1,000,000 per employee per accident; (c) Commercial General Liability Insurance, on an occurrence basis, naming Home Depot as an additional insured, with a combined single limit of liability for bodily injury (including, without limitation, death) and property damage of not less than $2,000,000 per each occurrence, and in the aggregate not less than $5,000,000; and (d) Automobile Liability Insurance covering use of all owned, non-owned and hired vehicles, with a minimum combined single limit of liability for bodily injury (including, without limitation, death) and property damage of not less than $1,000,000 per occurrence and (e) if applicable, Contractor's Pollution Liability: $1,000,000 per loss/$2,000,000 annual aggregate (occurrence form).

8.2 Certificate of Insurance. Upon execution of this Agreement, Contractor shall provide Home Depot with a certificate of insurance ("COI") identifying the coverage required hereunder and naming Home Depot as an additional insured. In addition, the COI shall be endorsed to provide Home Depot with at least 30 days prior written notice in the event of any proposed cancellation or modification affecting Home Depot's rights under the insurance policies at issue.

8.3 Bonds. Home Depot shall have the option to require Contractor and/or its Staff to be bonded.

8.4 Additional Terms. All insurance must be placed with insurers having a Best's rating of "A-10" or better. The fact that Contractor has obtained the insurance required in this Agreement shall in no manner reduce or otherwise affect Contractor's obligations or liabilities under this Agreement.

**9.0 Independent Contractor.** The status of Contractor shall be that of independent contractor. Neither Contractor nor Staff shall be deemed employees, agents, or contractors of Home Depot. None of the terms set forth in this Agreement will be construed as creating a partnership, joint venture, agency, master-servant

employment, trust, or any other relationship between Home Depot and Contractor or Staff. Contractor and Staff are not eligible for, nor may they participate in, any employee benefit plans of THD. Contractor is solely responsible for paying any and all salaries, fees, benefits, taxes (including, without limitation, social security and income), and any other applicable statutory deductions required by law pertaining to Staff.

**10.0 Subcontracting.**
**10.1 Subcontractors** Contractor must notify Home Depot of Contractor's intent to subcontract any of the Services provided to Home Depot under this Agreement. Home Depot in its sole discretion may deny any sub-contracting by Contractor. If Home Depot consents to any such sub-contracting: (a) Each independent sub-contractor must have a written agreement between the Contractor and the independent sub-contractor to include provisions of confidentiality, insurance, representations and warranties and Safety Standards as set forth in Exhibit A, that are no less stringent than those in this Agreement between Contractor and Home Depot; (b) Contractor shall exercise appropriate supervision of sub-contractors and shall be solely responsible for the payment of any compensation and the payment or non-payment of any payroll taxes, unemployment insurance, social security, workers compensation, pensions or annuities which are imposed with respect to payments of compensation from Home Depot to Contractor hereunder. At Home Depot's request, Contractor will promptly (a) provide Home Depot with a list of all subcontractors providing Services under this Agreement and their contract with Contractor and/or (b) replace individuals providing Services under this Agreement. Home Depot will not be required to pay for Services performed in an unsatisfactory manner by such replaced individuals or for the time spent to orient the replacement individuals
**10.2 Liens.** Contractor will not create or permit to be created or to remain, and will discharge (or bond, if permitted below) any lien (including, but not limited to, the liens of mechanics, laborers or materialmen for work or materials alleged to be done or furnished in connection with the Premises at Contractor's behest), encumbrance or other charge upon any Home Depot property or any part thereof provided, that Contractor shall not be required to discharge any such liens, encumbrances or charges as may be placed upon any Home Depot resulting from the acts or omissions of Home Depot. Contractor shall have the right to contest, in good faith and by appropriate legal proceedings, the validity or amount of any mechanics', laborers' or materialmen's lien or claimed lien. In the event of such contest, Contractor shall give to Home Depot reasonable security (e.g., a legally sufficient bond), as may be required by Home Depot to insure payment thereof and to prevent any sale, foreclosure or forfeiture of the Home Depot property or any part thereof by reason of such non-payment. On final determination of such lien or such claim for lien against Contractor, Contractor will immediately pay any judgment rendered, with all proper costs and charges, and shall have such lien released or judgment satisfied at Contractor's expense, and upon such payment and release of satisfaction, Home Depot will promptly return to Contractor such security as Home Depot shall have received in connection with such contest. Contractor will pay, protect and indemnify Home Depot within ten (10) days after demand therefore, from and against all liabilities, losses, claims, damages, costs and expenses, including reasonable attorney's fees, incurred by Home Depot by reason of the filing of any lien and/or the removal of the same.

**11.0 Assignment.** Contractor shall not assign this Agreement or any of its rights, interests, or obligations under this Agreement, without THD's prior written consent. Any such assignment or delegation without THD's consent shall be deemed void and of no effect.

**12.0 Use of Name and Publicity.** Contractor shall not, and shall ensure that its subcontractors shall not, make any disclosures concerning the commercial relationship between Contractor and THD without THD's prior written consent. Further, Contractor shall have no right to use, in any manner whatsoever, the name, logos, trademarks, trade names, service marks, or other marks of Home Depot (collectively, "Marks"), without prior written consent from Home Depot, which consent shall be at Home Depot's absolute discretion. If consent is granted, use shall be limited to the time and manner expressly granted in writing by Home Depot. In the event of a breach of this section by Contractor or its subcontractors, Home Depot shall have the right, at its option to do one or more of the following: (i) issue a retraction in the name, and on behalf of Contractor; (ii) require Contractor to issue a retraction; or (iii) terminate all or any part of this Agreement without further liability. Breach of this provision by Contractor shall be considered a material breach of this Agreement and Home Depot may terminate this Agreement immediately upon delivery of notice to Contractor and without further liability to it.

**13.0 Notices.** Except for notices to terminate an Exhibit which shall be by fax or email, all notices permitted or required to be given under this Agreement will be deemed sufficient if given by first class United States mail, postage prepaid and return receipt requested or by a nationally recognized courier service, and addressed as shown below ("Notices").

If to Home Depot:

Home Depot U.S.A., Inc.
Maintenance Department C-3
2455 Paces Ferry Road NW
Atlanta, GA 30339
Attn: Building Services

With a copy to :

Home Depot U.S.A., Inc.
Store Operations Legal Department
2455 Paces Ferry Road, C-20
Atlanta, GA 30339
Attn: Senior Counsel

If to Contractor:

KEBB MANAGEMENT
[illegible]
[illegible]
Attn: [illegible]
Email: [illegible]
Phone: [illegible]
Emergency Phone 1: 978-[illegible]
Emergency Phone 2: 978-[illegible]

**14.0 Dishonesty/Breach of Trust.** Home Depot is prohibited from having any individual perform work who has been convicted of a felony involving dishonesty or a breach of trust. In order to assist Home Depot in complying with this policy, Contractor will not assign any person to provide Services without first inquiring into whether the person has a felony conviction involving dishonesty or a breach of trust and documenting the results of the inquiry. Contractor will not assign any person to provide Services if they have such a felony conviction, and Contractor will have the ongoing duty to inform Home Depot immediately upon learning that one of Contractor's employees or subcontractors has been convicted of a felony. Should Contractor become aware that an individual has been convicted of such a felony, Contractor will promptly advise Home Depot and remove the individual from the project immediately. Contractor will indemnify, defend and hold Home Depot harmless from and against any and all loss, cost, liability or expense (including, but not limited to, reasonable legal fees and litigation costs and expenses) resulting from its failure to comply with its obligations hereunder.

**15.0 Changes and Modifications.** The terms and conditions of this Agreement and Exhibits hereto may not be amended, waived, or modified, except in a writing signed by both parties.

**16.0 Severability.** In the event that any provision of this Agreement is held invalid or unenforceable in any circumstances by a court of competent jurisdiction, the remainder of this Agreement, and the application of such provision in any other circumstances, will not be affected thereby.

**17.0 Governing Law.** This Agreement will be governed by and construed and enforced in accordance with the laws of the State of Georgia, without regard to its conflicts of laws rules. The parties agree that the courts in the State of Georgia shall have exclusive jurisdiction over any disputes under or relating to this Agreement.

**18.0 Dispute Resolution.** Except injunctive or other equitable relief, Contractor and Home Depot agree that, as a condition precedent to the institution of any action regarding disputes arising under or in connection with this Agreement, such disputes shall first be submitted to mediation before a professional mediator selected by the parties. Such mediation shall be conducted at a mutually agreed time and place, and the mediator's fees shall be split equally between the parties. If mediation is unsuccessful, the parties shall submit disputes to either the US District Court for the Northern District of Georgia, Atlanta Division, or the Superior Court of Cobb County, Georgia.

**19.0 Cooperation with Other Contractors.** Contractor will reasonably cooperate with other contractors and consultants working on projects for Home Depot as may reasonably be required by Home Depot.

**20.0 Negotiated Terms.** The language, terms, conditions, and provisions of this Agreement are the result of negotiations between the parties and this Agreement will not be construed in favor of or against any party by reason of the extent to which any party or its professional advisors participated in the preparation of this Agreement or based on a party's undertaking of an obligation under this Agreement.

**21.0 Remedies and Waiver.** The remedies specified in this Agreement are cumulative and are in addition to any remedies available at law or in equity, except as otherwise set forth in this Agreement. No term or condition of the Agreement shall be waived or construed to be waived by either party unless such waiver is in writing and signed by an authorized agent of the waiving party. No acceptance of full or partial performance during the continuance of a breach shall constitute a waiver of the right to demand strict performance. No custom or practice of the parties at variance with the terms hereof shall constitute a waiver of the right to demand strict performance. Waiver of a breach of any provision of this Agreement does not constitute a waiver of any other breach of the same provision or any other provision of this Agreement.

**22.0 Non-Solicitation.** Contractor shall not, directly or indirectly, during the term of this Agreement and for a period of twelve (12) months after the effective date of termination of this Agreement, recruit, or attempt to recruit, discuss employment with, or otherwise utilize the services in any capacity of any person who is or was an employee or contractor of Home Depot during the term of this Agreement. In the event of breach of this provision by Contractor, Contractor shall pay to Home Depot as liquidated damages and not as a penalty, an amount

equal to two times the salary of the Home Depot employee so recruited at the time of that employee's departure from Home Depot.

**23.0 Headings.** The headings of sections of this Agreement are for convenience of reference only and will not affect the meaning or interpretation of this Agreement in any way.

**24.0 Survival.** The sections of this Agreement that by their nature are intended to survive its expiration or termination ("**Sections**"), include, without limitation, Sections 3, 4, 5, 6, 7, 8, 9, 11, 12, 14, 15, 16, 20, 21, and this Section 24. These Sections shall survive the expiration or termination of this Agreement.

**25.0 Computer Systems Access.** THD, from time to time in its sole discretion may elect to grant Contractor limited, non-transferable access to certain proprietary computer systems and technologies (the "Systems"). In order to receive such access, Contractor agrees to the following:

a. Contractor will have or promptly create internal security policies that, at a minimum, comply with this Section and common industry standards and protect the integrity of the Systems. The Systems must at all times be protected from unauthorized use, theft, misuse, accidental or unauthorized modification, disclosure, transfer or destruction. Anyone who has been convicted of any felony or misdemeanor offense related to computers, theft, or information security, will not be allowed to serve as a Contractor Guardian Point of Contact ("SGPOC"). The SPGOC will manage Contractor's access to the Systems by granting and removing individual user access and working with THD to resolve any Systems-related issues that may arise.

b. Contractor shall be liable at all times for its employees, agents and subcontractors (collectively, "Users") use, misuse or access to the Systems. Contractor's Users will: (i) access the Systems only in the manner prescribed by THD; (ii) be assigned a separate and unique User ID by Contractor and will use only that ID when logging on to the Systems; (iii) log off the Systems immediately upon completion of each session of service; (iv) not allow unauthorized individuals to access the Systems; (v) keep strictly confidential the User ID and password and all other information that enables such access; (vi) not reuse a compromised password (e.g. a password that has become known to anyone else at any time, including in an emergency); (vii) only utilize such access to perform its obligations to THD; (viii) comply with all service and information protection policies instituted by THD; (ix) not perform any unauthorized exploring or mining of the Systems; and (x) only access the portion of the Systems necessary to perform the Contractor's obligations. The obligations of this Agreement extend to Contractor's Users, and Contractor shall inform such persons of their obligations hereunder. Contractor is solely responsible for obtaining the hardware and software necessary to properly access the Systems.

c. If Contractor discovers or is notified of a breach or a potential breach of security relating to the Systems, any data or information contained therein, including derivatives thereof ("Systems Information"), or any applicable Law, the SGPOC will (i) promptly notify THD of such breach or potential breach and (ii) if the applicable Systems Information was in the possession of Contractor at the time of such breach or potential breach, Contractor, with THD's consent, shall (1) investigate and use its commercially reasonable efforts to mitigate the effects of the breach or potential breach and (2) provide THD with assurance reasonably satisfactory to THD that such breach or potential breach will not recur. No independent action to correct a security issue should be taken unless failure to immediately respond will result in irreparable harm to Contractor or THD.

d. Contractor will not introduce any malicious code that can or will record or erase data or programming, infect, disrupt, damage, disable, or shut down the Systems or any component of the Systems. In the event any malicious code is found to have been introduced into the Systems by Contractor, Contractor shall, at its sole cost and expense, (i) report it immediately to THD; (ii) use commercially reasonable efforts to reduce or eliminate the effects of the malicious code; and (iii) if the malicious code causes a loss of operational efficiency or loss of data, mitigate and restore such losses.

e. Except as otherwise expressly provided herein, THD retains all right, title and interest in and to the Systems and the Systems Information. Upon termination of this SBA or upon THD's request, Contractor will promptly return to THD all tangible items containing any Systems Information, including all copies, abstractions and compilations thereof. Contractor will certify in writing that it has fulfilled its obligations under this Section.

**26.0 Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute the same Agreement.

**27.0 Disclosures.** Contractor shall promptly notify Home Depot in writing when Home Depot's business to Contractor exceeds 20% of Contractor's total business volume, or Contractor intends to subcontract more than 10% of the Services under this Agreement.

**28.0 Precedence.** Any pre-printed terms and conditions contained in any purchase order or other similar document shall be null and void and have no force or effect in modifying the terms and conditions of this Agreement.

**29.0 Entire Agreement.** This Agreement along with Exhibit A attached hereto and/or any Work Orders which are incorporated herein by reference contain the entire agreement between the parties with respect to the subject

matter hereof, and supersedes any and all prior or contemporaneous agreements, understandings, negotiations, representations or proposals of any kind, whether written, oral or otherwise. Amendments, if any, shall be valid only if in writing and signed by the duly authorized representatives of the parties.

| | |
|---|---|
| Exhibit A | Safety Standards |
| Work Orders | Incorporated by reference |

Neither party has relied upon any statements, representations or other communications that are not contained in this Agreement.

IN WITNESS WHEREOF, the parties have executed this Maintenance Services Agreement.

**HOME DEPOT U.S.A., INC.**
("Home Depot")

**Signature:** [signature]

**Printed Name:** Tammy Darling

**Title:** Service Center Manager

**Date:** 6/7/10

**KEBB MANAGEMENT INC**
("Contractor")

**Signature:** [signature]

**Printed Name:** BRIAN J SHEEHY

**Title:** PRESIDENT

**Date:** 5-28-10

# EXHIBIT "2"

# Building Services- Quote Form

Date: 5/20/2013

Store Info

| | | | | | |
|---|---|---|---|---|---|
| Site# | 2602 | Store Name | Home Depot | WO# | 2602001030 |
| City | Watertown | State | MA | Zip 2602 | Contact |

Vendor Info

| | | | | | |
|---|---|---|---|---|---|
| Vendor | KEBB Property Management | Phone # | 978-683-3574 | Fax # | 978-687-3746 |
| Address | 240 Pleasant Street | City | Methuen | State | MA ZIP 01844 |
| E-mail | kebbmgmt@aol.com | Other | | | |

Description & details of proposed work to include damage/abuse

Joint repair joints and cracks** Concrete repair saw cut and repalce areas of conrete (walk through with store manager for areas he designates) THIS IS FOR JOINT, CRACKS AND SAW CUT CEMENT REPAIR ONLY

Labor (More)

| Description | QTY | Hours | Unit Cost | Ext. Price | Trip |
|---|---|---|---|---|---|
| Joint and Crack Repair | 1.0 | 1.0 | $ 40,000.00 | $ 40,000.00 | |
| Saw cut (Not to exceed 60,000.00) | 1.0 | 1.0 | $ 60,000.00 | $ 60,000.00 | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| Total From Additional | $ | | Labor Subtotal | $ 100,000.00 | |
| | Tax Rate % | 0.000% | Tax Total | $ - | |
| | | | Total Labor (w/Tax) | $ 100,000.00 | |

| Found During | |
|---|---|
| Service WO | |
| Insp/PM | |
| Other | |

| Requested By | |
|---|---|
| Store | |
| THD B.S. | |
| Other | |

Materials: Unit Cost prior to Mark up (more)

| Asset ID | Description | Qty | Unit Cost | Ext. Price | Trip |
|---|---|---|---|---|---|
| 1 | Cement | 1.0 | $ 4,800.00 | $ 4,800.00 | |
| | | | $ | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| Total Additional Material | $ | | Sub total Material | $ 4,800.00 | |
| | Tax Rate % | 6.250% | Tax Total | $ 300.00 | |
| | Materials Markup % | | Total Materials | $ 5,100.00 | |

| Functional and Safe? | |
|---|---|
| Yes | |
| No | |

| Visit Dates | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| Assets | |
|---|---|
| | 0 |

Other: (subcontractors, equipment, Freight, Travel, Overhead, Profit etc.) (more)

| Description | QTY | Unit Cost | Ext. Price | No Tax | Trip |
|---|---|---|---|---|---|
| Tool Truck | 1.0 | $ 1,200.00 | $ 1,200.00 | | |
| Materials Equipment and Storage Container | 1.0 | $ 4,200.00 | $ 4,200.00 | | |
| | | | $ | | |
| | | | $ | | |
| | | | $ | | |
| | | $ | $ | | |
| | | $ | $ | | |
| Additional Other (No Tax) | $ | Additional Other (w/Tax) | $ | | |
| Other Sub Total (No Tax) | $ | Other Subtotal (w/Tax) | $ 5,400.00 | | |
| Tax Rate % | | Tax Total | $ | | |
| | | Total Other | $ 5,400.00 | | |

(more)

| Trip Total | $ | Main Quote Total | $ 110,500.00 | Alternate Total | $ |
|---|---|---|---|---|---|

Proposed by:

Signature ______________________

Printed ______________________

Approved By:

Signature ______________________

Print ______________________

# EXHIBIT "3"

> [illegible]
> [illegible]@homedepot.com<mailto:[illegible]@homedepot.com>
>
> From: Rawcliffe, Russell
> Sent: Thursday, June 20, 2013 3:09 PM
> To: 'Chris Sibley'
> Cc: Dillon, Dave; 'kebbmgmt@comcast.net'
> Subject: RE: Decrepit floor
>
> Chris – Give me a call to discuss this one, Store #2602 Watertowm, MA..
>
> Russell W. Rawcliffe
> Sr. Business Analyst, Building Services
> The Home Depot, Inc. | SSC C-3 | 2455 Paces Ferry Road SE | Atlanta, GA 30339
> Phone: (770) 433-8211 ext. 83176
> Mobile: (770) 366-1243
> Fax: (770) 384-4954
> Email: russell_rawcliffe@homedepot.com<mailto:russell_rawcliffe@homedepot.com>
>
> From: Rawcliffe, Russell
> Sent: Thursday, June 20, 2013 3:07 PM
> To: 'kebbmgmt@comcast.net'
> Cc: Dillon, Dave
> Subject: RE: Decrepit floor
>
> Brian,
>
> Upload the quote to WO #2602001030 and I will approve.
>
> Russell W. Rawcliffe
> Sr. Business Analyst, Building Services
> The Home Depot, Inc. | SSC C-3 | 2455 Paces Ferry Road SE | Atlanta, GA 30339
> Phone: (770) 433-8211 ext. 83176
> Mobile: (770) 366-1243
> Fax: (770) 384-4954
> Email: russell_rawcliffe@homedepot.com<mailto:russell_rawcliffe@homedepot.com>
>
> From: kebbmgmt@comcast.net<mailto:kebbmgmt@comcast.net>
[mailto:kebbmgmt@comcast.net]<mailto:[mailto:kebbmgmt@comcast.net]>
> Sent: Thursday, June 20, 2013 2:55 PM
> To: Rawcliffe, Russell
> Subject: Re: Decrepit floor
>
> Russell,
>
> Find attached the quote for joint repair and concrete repair only.
> Brian J Sheehy
>
> KEBB Management, Inc
> 240 Pleasant Street
> Methuen, MA 01844
> Office 978-683-3574

# EXHIBIT "4"

KEBB Management, Inc.

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

# Invoice

| Date | Invoice # |
|---|---|
| 10/23/2013 | 3068 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| 2602001030 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 2602 Watertown, MA joint and crack repair to floors | | |
| | LABOR | 100,000.00 | 100,000.00 |
| | MATERIALS/SUPPLIES | 5,100.00 | 5,100.00 |
| | TRUCK CHARGE | 1,200.00 | 1,200.00 |
| | EQUIPMENT | 4,200.00 | 4,200.00 |

ank you for your business
/w.kebbmanagement.com

**Total** $110,500.00

# EXHIBIT "5"



January 14, 2014

Holly Northey
Sr. Manager, Building Services
The Home Depot, Inc.
2455 Paces Ferry Road SE
Atlanta, GA 30339

Re: Work order# 2602001030

Dear Holly,

We have put a book together regarding Store# 2602 Watertown, MA concrete restoration. The photos in the book are all labeled with the Aisle numbers. You will find the description pages correspond with the aisle number with the work described below. Please call me with any questions.

Thank you,

Brian J Sheehy
KEBB Management, Inc
240 Pleasant Street
Methuen, MA 01844
Office: 978-683-3574
Cell: 978-509-3455

# Home Depot Watertown, MA
# Completed work by Department

** All photos are labeled by the Aisle number in the book**

Paint Aisles 1-4

- Cut and repaired joints at two large square cutouts, installed new polyurea jointfill
- Cut out old material at crack and replaced with new polyurea jointfill, cut old material from joint and installed new material
- Cut out and cleaned divots, and installed new rapid refloor ground flush in three areas
- Cut out and cleaned divots and holes, filled with new material. repaired areas of joint by cleaning out and filled with new polyurea

Lighting ceiling and fans Aisles 6-7

- Repaired large crack at end of isle, cut out and cleaned, and replaced with new polyurea

Electrical Aisles 8-10

- Cut out crack at end of isle 8 and filled with polyurea jointfill, repaired numerous holes
- Cut out and installed rapid refloor and ground flush
- Repaired damaged area of joint, installed new polyurea jointfill, repaired numerous holes by cutting out and installing rapid refloor and ground flush

Storage Aisles 11

- Cut out and repaired holes, installed rapid refloor, ground flush
- Repaired low spots and holes by grinding clean and installing new rapid refloor and ground flush

Multiple departments Aisles13-17

- Repaired cracks by cutting clean and installed new polyurea joint fill at main isle and rear of store
- Repaired large crack by cutting clean and installed new polyurea joint fill
- Repaired divots and holes by cutting out clean and filled with rapid refloor, and ground flush, and repaired cracks at front by crack chasing clean and filled with polyurea jointfill

Flooring Aisles 18-19

- Repaired cracks by cutting clean and installed new polyurea joint fill
- Repaired large crack by cutting clean and installed new polyurea joint fill, repaired several divots and holes
- Cut and repaired joints at two large square cutout, repaired cracks by cutting clean and installed new polyurea joint fill

Plumbing Aisles 20-21

- Repaired a few holes by cleaning out and filled with polyurea jointfill

- Repaired few holes and cracks towards rear of store

Lawn equipment / chemicals Aisles 22-24
- Repaired cracks near front by crack chasing and cleaning out and filling with polyurea jointfill
- Repaired a holes and cracks by cleaning out and filled with polyurea jointfill
- Repaired numerous holes and large joint near rear

Door & windows Aisles 25-27
- Repaired a holes and cracks by cleaning out and filled with polyurea jointfill

Tools & hardware Aisles 28-30
- Repaired a few holes by cleaning out and filled with polyurea jointfill, repaired nasty crack near front, and repaired area near replaced rectangle and replaced numerous cracks and holes

Trim, molding, lumber & building materials Aisles 31-37
- Repaired cracks by cutting clean and installed new polyurea joint fill
- Cut and repaired joints at two large square cutouts, installed new polyurea jointfill
- Repaired large joint damage at lumber isles, repaired by cleaning out and filled with polyurea jointfill
- Repaired cracks and divots by cleaning out and filling with polyurea jointfill and rapid refloor

Back Aisle and Front Main Aisles
- Repaired cracks by cutting clean and installed new polyurea joint fill at main isle and rear of store
- Repaired large crack by cutting clean and installed new polyurea joint fill
- Repaired divots and holes by cutting out clean and filled with rapid refloor, and ground flush, and repaired cracks at front by crack chasing clean and filled with polyurea jointfill

# EXHIBIT "6"

FEINMAN LAW OFFICES

*Business & Trial Lawyers*

The Northmark Bank Building
69 Park Street, Andover, Massachusetts 01810
Telephone: 978.475.0080

Fax: 978.475.0852
URL: http://www.feinmanlaw.com

Michael B. Feinman* Email: mbf@feinmanlaw.com
Stephen P. Shannon* Email: sps@feinmanlaw.com
Tali A. Tomsic Email: tat@feinmanlaw.com

*Admitted in Massachusetts and New Hampshire

April 28, 2014

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**AND FIRST CLASS MAIL**

Home Depot USA, Inc.
Maintenance Department C-3
2455 Paces Ferry Road Northwest
Atlanta, GA 30339

Attn: Building Services

RE: **KEBB Management, Inc. claims for improvements to Watertown Store – Work Order No. 2602001030**

Dear Sir/Madam:

As you are aware, this office is counsel to KEBB Management, Inc. I am forwarding this letter to you as a follow up of our prior communications and demands, including written demand of April 18, 2014.

My earlier demand of April 18, 2014 adequately set forth the basis for my client's claims against Home Depot USA, Inc. A copy of that demand letter is enclosed herewith for your review and incorporated by reference as to the merits of my client's claim.

Pursuant to the terms and provisions of the Maintenance Service Agreement between the parties dated May 27, 2010, and specifically pursuant to the provisions of Section 18.0, demand is hereby made for mediation between the parties to take place within the Commonwealth of Massachusetts. We demand that you provide written response and a commitment to compliance with the terms and provisions of the contract for dispute resolution within seven (7) days of the date of this letter, or I shall bring suit on behalf my client for all claims available to my client.

Pursuant to the provisions of Section 13.0 of the contract, this notice and demand for our resolution is being submitted to the parties requiring notice under the contract. Please give this matter your immediate attention.

Very truly yours,

Feinman Law Offices

Michael B. Feinman

MBF: kmk
Enclosures

cc: Home Depot USA, Inc.
Store Operations Legal Dept.
2455 Paces Ferry Road, C-20
Atlanta, GA 30339
Attn: Senior Counsel

(Via Certified Mail & First Class Mail)

Gerri L. Williams, Esq.
Store Operations Legal Dept.
2455 Paces Ferry Road C-20
Atlanta, GA 30339

(Via Certified Mail & First Class Mail)

14x5228/Demand Letter

# EXHIBIT "7"

The Home Depot Inc. - [illegible] Invoice Report - BATCH# 955332

Work Order # | REJECTION REASON | Invoice Date | Invoice Amt | Tax Amount | Freight Amt | Invoice Number | Invoice Description [illegible]

280200 1630 [illegible] | 1/23/2013 | [illegible] | [illegible] HD Store# 2602 | Watertown | MA [illegible] and crack repairs to floors [illegible] Labor: $100,000.00 Materials: $100.00 Truck: $1200.00 Equipment: $4200.00 Total: $105,500.00

1 of 5

4/22/2014 [illegible] PM

# EXHIBIT "8"

KEBB Management, Inc.

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

# Invoice

| Date | Invoice # |
|---|---|
| 4/3/2014 | 3121 |

Bill To
THE HOME DEPOT
Maintenance Payables
P.O. Box 105573
Atlanta, GA 30348-5573

| P.O. No. | Terms | Project |
|---|---|---|
| 2602000570 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 2602 Watertown, MA Initial work on Garage Doors | 0.00 | 0.00 |
| | LABOR | 7,832.00 | 7,832.00 |
| | MATERIALS/SUPPLIES | 123.90 | 123.90 |
| | CONTAINER | 820.00 | 820.00 |
| | PARKVIEW CONSULTING | 1,680.00 | 1,680.00 |
| | PERMIT/DRAFTS | 1,322.52 | 1,322.52 |
| | TRUCK FEE | 318.00 | 318.00 |

.nank you for your business
www.kebbmanagement.com

**Total** $12,096.42

KEBB Management, Inc.

# Invoice

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

| Date | Invoice # |
|---|---|
| 5/23/2014 | 3127 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| WEB-606740 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 3405 North Hampton, NH Floor repair | 0.00 | 0.00 |
| | LABOR | 300.00 | 300.00 |
| | TRUCK FEE | 74.20 | 74.20 |

nank you for your business
www.kebbmanagement.com

| Total | $374.20 |
|---|---|

KEBB Management, Inc.

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

# Invoice

| Date | Invoice # |
|---|---|
| 5/23/2014 | 3128 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| WEB-630570 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 3482 Manchester, NH Floor repair | | |
| | LABOR | 300.00 | 300.00 |
| | TRUCK FEE | 69.64 | 69.64 |

...ank you for your business
www.kebbmanagement.com

**Total** $369.64

KEBB Management, Inc.

P.O. Box 64
Methuen, MA 01844
TEL 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

# Invoice

| Date | Invoice # |
|---|---|
| 5/23/2014 | 3129 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| WEB-809335 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 2602 Watertown, MA Bollard removal | | |
| | LABOR | 300.00 | 300.00 |
| | TRUCK FEE | 82.18 | 82.18 |

Thank you for your business
www.kebbmanagement.com

**Total** $382.18

KEBB Management, Inc.

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

# Invoice

| Date | Invoice # |
|---|---|
| 5/23/2014 | 3130 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| WEB-811532 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 3484 Nashua, NH | | |
| | LABOR | 300.00 | 300.00 |
| | MATERIALS/SUPPLIES - DO NOT ENTER SIGN ORDERED | 110.97 | 110.97 |
| | TRUCK FEE | 69.64 | 69.64 |

hank you for your business
www.kebbmanagement.com

**Total** $480.61

KEBB Management, Inc.

# Invoice

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

| Date | Invoice # |
|---|---|
| 5/23/2014 | 3131 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| WEB-820684 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 3485 Concord, NH Replace Signage | | |
| | LABOR | 300.00 | 300.00 |
| | TRUCK FEE | 89.02 | 89.02 |

ank you for your business
www.kebbmanagement.com

**Total** $389.02



KEBB Management, Inc.

# Invoice

P.O. Box 64
Methuen, MA 01844
TEL. 978-683-3574 FAX 978-687-3746
Email: kebbmgmt@aol.com

| Date | Invoice # |
|---|---|
| 5/23/2014 | 3132 |

| Bill To |
|---|
| THE HOME DEPOT<br>Maintenance Payables<br>P.O. Box 105573<br>Atlanta, GA 30348-5573 |

| P.O. No. | Terms | Project |
|---|---|---|
| PM-884403 | NET45 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | HD Store# 2679 So. Bay, MA Shopping Cart Retrieval | | |
| | LABOR | 825.00 | 825.00 |
| | TRUCK/TRAILER | 180.00 | 180.00 |

hank you for your business
www.kebbmanagement.com

**Total** $1,005.00

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS<br>SUPERIOR COURT DEPARTMENT<br>COUNTY OF ESSEX | DOCKET NO. 2014-1469 D |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| KEBB MANAGEMENT, INC. | HOME DEPOT U.S.A., INC |

Plaintiff Atty: Michael B. Feinman
Address: Feinman Law Office, 69 Park Street, 2nd Floor
City: Andover State: MA Zip Code: 01810
Tel. +1 (978) 475-0080 BBO# 545,935

Type Defendant's Attorney Name
Defendant Atty: Unknown
Address:
City: State: Zip Code:

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

CODE NO. TYPE OF ACTION (specify) TRACK — IS THIS A JURY CASE?

**A01 Services Labor and Materials - Fast Track** — (●) Yes ( ) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

**TORT CLAIMS**
**(Attach additional sheets as necessary)**

A. Documented medical expenses to date:
1. Total hospital expenses $
2. Total doctor expenses $
3. Total chiropractic expenses $
4. Total physical therapy expenses $
5. Total other expenses (describe) $

Subtotal $

B. Documented lost wages and compensation to date $
C. Documented property damages to date $
D. Reasonably anticipated future medical expenses $
E. Reasonably anticipated lost wages and compensation to date $
F. Other documented items of damages (describe) $

G. Brief description of plaintiff=s injury, including nature and extent of injury (describe)

Total $

**CONTRACT CLAIMS**
**(Attach additional sheets as necessary)**

**Provide a detailed description of claim(s):**

Plaintiff provided goods, labor and materials to and for the benefit of the Defendant per contract. Defendant has failed to make payment despite repeated request.

**TOTAL** $125,597.07

**PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT**

None

I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Signature of Attorney of Record [signature] Date: 9/15/2014

A.O.S.C. 3-2007

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 2014-01469-D

KEBB Management, Inc. ........................................, Plaintiff(s)

v.

Home Depot, U.S.A. Inc. ........................................, Defendant(s)

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve upon Stephen P. Shannon - Feinman Law Offices, plaintiff's attorney, whose address is 69 Park Street, Andover, MA 01810, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Lawrence either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Barbara J. Rouse, Esquire, at Salem, the 18th day of September, in the year of our Lord two thousand fourteen

A true copy Attest: [signature] 9/25/14 Deputy Sheriff Suffolk County

[signature] Clerk

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein *and* also file the original in the Clerk's Office.

NOTES:

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ____________________, 20 , I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (see Mass. R. Civ. P. 4 (d) (1-5):

________________________________________________________

________________________________________________________

________________________________________________________

Dated: , 20 . ______________________________

N.B. TO PROCESS SERVER:-
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

| , 20 . |
|---|

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)